UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Tracy Shannon Devane,

                            **Plaintiff,**

      -against-

Commissioner of Social Security,

                            **Defendant.**

1:19-cv-02134 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

On March 7, 2019, Plaintiff Tracy Shannon Devane ("Plaintiff" or "Devane") filed this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), and § 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), challenging the final decision of the Commissioner of Social Security ("Commissioner), denying her application for supplemental security income ("SSI"). (Compl., ECF No. 1.) Presently before the Court is a joint stipulation in lieu of motions for judgment on the pleadings in which both Devane and the Commissioner are seeking judgment on the pleadings. (Joint Stip., ECF No. 18.) For the reasons set forth below, judgment on the pleadings is GRANTED in favor of the Commissioner.

**BACKGROUND**

**I.    Procedural Background**

On October 27, 2015, Devane Plaintiff filed an application for SSI with an alleged onset date of May 1, 2013.[1] (Administrative R. ("R."), ECF No. 16, 207-12.) On January 19, 2016, her

---

[1] A claimant can collect SSI only for the period beginning on the month following the date the SSI application was filed, irrespective of the date the claimant alleges his or her disability actually began. *See* 20 C.F.R. § 416.335 ("When you file an application [for SSI] in the month that you meet all the other

application was denied. (R. 86.) Thereafter, Devane requested a hearing, which was held by video on December 29, 2017 before Administrative Law Judge ("ALJ") Sharda Singh. (R. 50-85.) ALJ Singh denied Devane's application on April 16, 2018. (R. 10-22.) ALJ Singh's decision became the Commissioner's final decision when the Appeals Council denied Devane's request for review on January 7, 2019. (R. 1-6.) This action followed.

## II.     Non-Medical Evidence

Born on December 11, 1997, Devane was 17 years old at the time she filed her application[2] and twenty years old at the time of the ALJ hearing. (*See* R. 55, 207.) Devane has a high school education. (R. 55.)

## III.    Relevant Medical And Educational Evidence

The parties stipulated to the relevant medical, education and opinion evidence and the Court adopts and incorporates by reference Sections D, E and F of the Joint Stipulated Statement of Facts, entitled "Medical Evidence of Record[,]" "Education Evidence of Record[,]" and "Opinion Evidence" in their entirety. (Joint Stip. at 6-16.)

## IV.     The December 29, 2017 Administrative Hearing

At the December 29, 2017 administrative hearing, Plaintiff, represented by counsel, testified regarding her work, participation in the Friends Network and activities of daily living. (R. 57-69.) Devane testified that, following high school, she began participating in the Friends Network, a socialization program for people with developmental disabilities. (R. 60-61.) Devane

---

requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application.").

[2] Devane filed the application approximately one month before her eighteenth birthday. (R. 21.) However, during the hearing she and her attorney agreed to treat the case as an adult application. (R. 54.)

also testified that she worked approximately 12 hours per week at a grocery store. (R. 55-59.) Devane found the job through PARC[3] and worked with a job coach. (R. 57-58.) Devane testified that she went to the movies and restaurants with her friends and enjoyed playing and watching basketball. (R. 65-66.) She helped with household cleaning, but did not do her own laundry because she did not know how to start the washing machine, and she did not cook or go to the grocery store. (R. 66-67.)

Devane's mother, Maureen Devane, also testified at the hearing. (R. 73-82.) Devane's mother testified that Devane had difficulty in school with other children and with bullying, but that the Friends Network "saved her life." (R. 75.)  With respect to her job, Devane's mother testified that she didn't think Devane would be able to work without her job coach. (R. 76-78.) She further testified that Devane was looking into moving into supported housing through PARC with a roommate from the Friends Network. (R. 79-80.)

Vocational Expert ("VE") William Cody also testified at the hearing. (R. 69-72.) The ALJ asked the VE whether there was work available to a person of Plaintiff's age, education and work history, who had no exertional limitations, but was limited to understanding, remembering and carrying out simple, routine, repetitive non-complex tasks. (R. 70.) The VE testified that such a person could perform the job of sorter, packer or cleaner. (*Id*.) The ALJ then asked whether a person who also was limited to goal-oriented work with no production rate requirement could perform any jobs in the national economy and the VE testified that such person could perform the same jobs.  (R. 71.) Finally, the ALJ testified that, if the same hypothetical person was off task

---

[3] The Partner, Achieve, Reach, Connect ("PARC") organization is a full service organization for children and adults with disabilities. See 11/19/15 Minutes of Putnam County Legislature Health, Social, Educational & Environmental Committee Meeting, available at https://bit.ly/3iYFZr7 (last visited Sep. 19, 2020).

for fifteen percent of a workday, she would not be able to perform any jobs in the national economy. (*Id*.)

**V.     ALJ Singh's Decision And Appeals Council Review**

Applying the Commissioner's five-step sequential evaluation, *see infra* Legal Standards Section II, the ALJ found at step one that Devane had not engaged in substantial gainful activity since October 26, 2015, the application date. (R. 12.) At step two, the ALJ determined that Devane had the severe impairments of intellectual disorder, borderline intellectual functioning, learning disorder, pervasive developmental disorder and autism. (*Id*.) The ALJ also found that Devane had the non-severe impairment of obesity. (R. 12-13.)

At step three, the ALJ found that Devane did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.) The ALJ specifically considered Listings 12.05, 12.10 and 12.11. (*Id*.) The ALJ considered the "paragraph B" criteria, and found that Devane had moderate limitations in understanding, remembering or applying information and in concentration, persistence and pace, and mild limitations in interacting with others and adapting or managing oneself. (R. 13-14.)

The ALJ then assessed Devane's Residual Functional Capacity ("RFC") and determined that she was able to perform a full range of work at all exertional levels, except she was limited to understanding, remembering and carrying-out simple, routine and repetitive non-complex tasks; could never perform work in a production-rate environment; and must perform goal-oriented work. (R. 14.) In weighing the medical evidence in the record, the ALJ gave partial weight to the

opinion of Neil Berger, Ph.D.;[4] no weight to the opinion of Dr. J. Ochoa;[5] some weight to the teacher questionnaire;[6] and great weight to the opinion of Devane's mother, to the extent it was consistent with the record. (R. 18-20.)

At step four, the ALJ found that Devane had no past relevant work. (R. 20.) At step five, the ALJ considered Devane's age, education and job skills, along with the RFC determination, and concluded that there were other jobs existing in significant numbers in the national economy that Devane could perform, including sorter, packer and cleaner. (R. 21-22.) Therefore, the ALJ found that Devane was not disabled during the relevant period and denied her claim for benefits. (R. 22.) Following the ALJ's decision, Devane sought review from the Appeals Council, which denied her request on January 7, 2019. (R. 1-6.)

## LEGAL STANDARDS

### I.  Standard Of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does [the Court] determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-04518 (ER), 2015 WL 110079, at *6 (S.D.N.Y.

---

[4] At the request of the Commissioner, Dr. Berger conducted an intelligence evaluation on December 29, 2015. (Joint Stip. at 14.)

[5] The record contained a written opinion by Dr. Ochoa, dated January 19, 2016. (R. 87-99.) However, the ALJ gave no weight to Dr. Ochoa's opinion because Dr. Ochoa did not examine Devane or have the benefit of reviewing the evidence. (*See* R. 19.) Dr. Ochoa's name is not mentioned in the Joint Stipulation.

[6] A teacher questionnaire had been completed by two teachers who had been with Devane every day for 40 minutes a day for 2-1/2 months. (Joint Stip. at 19.)

Jan. 7, 2015) (citing *Tejeda v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id.*; *accord Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Absent legal error, the ALJ's disability determination only may be set aside if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder *would have to conclude otherwise*." *Banyai v. Berryhill*, No. 17-CV-01366, 2019 WL 1782629, at *1 (2d Cir. Apr. 24, 2019) (summary order) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (internal quotation marks omitted)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

## II.     Determination Of Disability

A person is considered disabled for benefits purposes when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if [the combined effects of] [her] physical or mental impairment or impairments are of such severity

that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

If it is determined that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not progress to the next step. *See* 20 C.F.R. § 416.920(a)(4).

"When determining whether a claimant is disabled due to a mental impairment, an ALJ must apply a 'special technique' at the second and third steps of the five-step framework.'" *Cherry v. Comm'r of Soc. Sec.*, No. 17-CV-07999 (VEC), 2019 WL 1305961, at *11 (S.D.N.Y. Mar. 22, 2019) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). First, the ALJ must determine if the claimant has a "medically determinable mental impairment." *Id.* If the claimant is found to have such an impairment, the ALJ must "rate the degree of functional limitation," across four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920(a); *see also* 20 C.F.R. Pt. 404, Subpt. P App'x 1 § 12.00E.

After the first three steps (assuming that the claimant's impairments do not meet or medically equal any of the Listings), the Commissioner is required to assess the claimant's RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 416.920(e). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The claimant bears the burden of proof as to the first four steps. *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). It is only after the claimant proves that she cannot return to work that the burden shifts to the Commissioner to show, at step five, that other work exists in the national and local economies that the claimant can perform, given the claimant's RFC, age, education and past relevant work experience. *Id*.

**DISCUSSION**

Plaintiff raises three issues that she contends require remand. (Joint Stip. at 16-40.) First, Plaintiff argues that the ALJ incorrectly analyzed the medical and non-medical evidence of record. (*Id*. at 17-21, 29-30.) The gist of this argument appears to be that the ALJ erred in concluding that Devane's intellectual impairments did not meet or medically equal Listing 12.05 and in her weighing of the opinion evidence. (*Id*. at 30-31.) Second, Plaintiff argues that the ALJ erred in concluding that Plaintiff can perform substantial gainful employment. (*Id*. at 30-37.) Plaintiff's second argument appears to be that the ALJ's RFC determination was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ should have found that her impairments met the criteria for Listing 12.10. (Joint Stip. at 16-40.) The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's impairments, singly or in combination, did not meet or medically equal a Listing. (*Id*. at 23-28.) The Court considers each of Plaintiff's arguments in turn.

**I.   Listing 12.05**

To satisfy Listing 12.05, a claimant must establish the criteria of subparagraphs A or B.[7] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05. Devane does not argue that she met Listing 12.05A, which requires, *inter alia*, "significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized

---

[7] As the Commissioner notes (Joint Stip. at 23 n.3), effective January 17, 2017, the SSA modified "the criteria in the Listing of Impairments (listings) that [it] use[s] to evaluate claims involving mental disorders in adults and children under titles II and XVI of the Social Security Act (Act)." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 (Sept. 26, 2016). The implementing regulations state that the SSA will "apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." *Id*. Thus, the Court applies these regulations, which were in place at the time of the ALJ's decision.

testing of intellectual functioning." *Id*. § 12.05(A)(1). Thus, the Court focuses on Listing 12.05(B). Listing 12.05(B) requires a claimant to satisfy three elements. *See id*. First, the claimant must establish significantly subaverage general intellectual functioning evidenced by: (a) a full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or (b) a full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence. *See id*. § 12.05(B)(1). Second, the claimant must establish significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (a) understand, remember or apply information (*see* 12.00E1); or (b) interact with others (*see* 12.00E2); or (c) concentrate, persist or maintain pace (*see* 12.00E3); or (d) adapt or manage oneself (*see* 12.00E4). *See id*. § 12.05(B)(2). Third, the claimant must establish that the evidence about the claimant's current intellectual and adaptive functioning and about the history of the claimant's disorder demonstrates or supports the conclusion that the disorder began prior to the claimant's attainment of age 22. *See id*. § 12.05(B)(3).

The ALJ stated that she considered Listings 12.05, 12.10 and 12.11 and whether the "paragraph B" criteria were satisfied. (R. 13.) The Court notes that the evaluation of intellectual disorders under § 12.05 is distinct from the special technique applied to the evaluation of mental disorders generally. *See* 20 C.F.R. Pt. 404, Subpt. P App'x 1 § 12.00H. Nonetheless, "[t]he second prong of Listing 12.05(B) addresses deficits in adaptive functioning and parallel the special technique criteria." *Lord v. Comm'r of Soc. Sec.*, No. 18-CV-01213, 2020 WL 1428930, at *6 (W.D.N.Y. Mar. 24, 2020). Under either framework a claimant is required to show an extreme

10

limitation of one, or marked limitation of two, of the broad areas of mental functioning. Thus, the Court considers whether the ALJ's determination that Devane had at most moderate limitations in each of these areas is supported by substantial evidence.

In understanding, remembering or applying information, the ALJ determined that Plaintiff had a moderate limitation. (R. 13.) Plaintiff argues that the ALJ should have found a greater limitation based on evidence that Plaintiff had borderline intellectual functioning; received co-teaching services; and that her mother testified that she repeatedly needed to be shown how to use the washing machine. (Joint Stip. at 17-18.) To the extent that Plaintiff's argument is based on overall evidence of an intellectual disorder, the Court notes that evidence of "significantly subaverage general intellectual functioning" is necessary, but not sufficient, to meet Listing 12.05(B).[8] The ALJ recognized that intellectual testing indicated a full scale IQ of 74, in the borderline area of intellectual functioning, but explained that she declined to find a marked limitation because the testing also indicated that Plaintiff's verbal comprehension was 83, which was well into average range. (R. 13.) In finding a moderate limitation, the ALJ also relied on Devane's September 2015 Individualized Education Plan ("IEP"),[9] which indicated that she made great progress due to her great effort and work ethic, as well as consultative examiner Grasso-Megyeri's opinion that Plaintiff could understand and follow directions and Plaintiff's testimony

---

[8] The Commissioner argues that Plaintiff does not meet the § 12.05(B)(1) criteria (see Joint Stip. at 25) based on her IQ scores, but the ALJ did not make such a finding and, thus, the Court does not consider this argument.

[9] The September 2015 IEP report stated that Plaintiff was "a very sweet young girl who tries hard to fit in and make friends" and was "very caring and friendly," "appear[ed] to enjoy school and her club activities very much," "made good peer relationships and enjoy[ed] her peer interactions during class," and did not require psychological counseling for the 2015-2016 school year because she was able to "seek[] out assistance from the social worker when needed." (Joint Stip. at 27.)

that she had no problems in memory.[10] (*Id*.) Thus, the Court finds that this determination is supported by substantial evidence.

In interacting with others, the ALJ found that Plaintiff had a mild limitation. (R. 13.) Plaintiff contends that the ALJ should have found a greater limitation because the Friends Network was a socialization group for people with disabilities and the goal was for Plaintiff to make friends with staff assistance. (Joint Stip. at 19.) Plaintiff further contends that the ALJ should have given greater weight to the teacher questionnaire indicating that Plaintiff had obvious problems in making and keeping friends. (*Id*.) However, the ALJ acknowledged Plaintiff's reported difficulties with bullying and making friends in high school, but found that Plaintiff experienced significant improvement after she graduated high school and began participating in the Friends Network, where the record indicated she formed real friendships. (R. 13.) The ALJ also cited Dr. Berger's observations that Plaintiff presented as relaxed, cooperative, comfortable and friendly, and that consultative examiner Grasso-Megyeri noted that Plaintiff presented with appropriate pragmatic skills, including the ability to interact appropriately with others. (*Id*.) Thus, there is substantial evidence to support the ALJ's determination.

In concentration, persistence and maintaining pace, the ALJ found that Plaintiff had a moderate limitation. (R. 14.) The ALJ noted that Plaintiff had to move from working in the bakery to working in the front of the store because she had trouble keeping pace in the bakery, but that the record showed she was able to work as a grocery bagger at the appropriate pace. (*Id*.) Plaintiff argues that her employment was supported through PARC and that the ALJ forgot that

---

[10] At the request of the Commissioner, on January 11, 2016, a speech/language consultative examination was performed by speech-language pathologist Dawn Grasso-Megyeri, M.S., who interviewed Plaintiff once. (Joint Stip. at 16.)

she had a job coach for two of the three days that she worked. (Joint Stip. at 18-19.) However, the ALJ acknowledged these facts in his decision, but also reasoned that Plaintiff worked for at least ten hours independently with positive feedback from her supervisors. (R. 18.) The ALJ referred to Plaintiff's August 2017 Supported Employment Extended Service Plan, which indicated that she was able to bag groceries at an appropriate pace (R. 17 (citing R. 285).) The ALJ also cited Dr. Berger's finding that Plaintiff's concentration was good and Grasso-Megyeri's observation that she was cooperative and attentive. (R. 16-17.) Thus, the Court finds that the ALJ's determination is supported by substantial evidence.

In adapting and managing oneself, the ALJ found that Plaintiff had a mild limitation. (R. 14.) The ALJ noted that Plaintiff had difficulty dressing and combing her hair, but that she addressed this, in part, by having her hair permed. (*Id*.) The ALJ also found that the record indicated that Plaintiff generally was able to function independently, including performing well at work and preparing to move into an apartment with a friend. (*Id*.) Plaintiff disagrees with the assessment, arguing that the teacher questionnaire and other evidence supported a greater limitation in functioning. (Joint Stip. at 19-20.) However, "[u]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support [her] position . . . Plaintiff must show that no reasonable fact finder could have reached the ALJ's conclusions based on the evidence in record." *Sprague v. Comm'r of Soc. Sec.*, No. 18-CV-00666 (DB), 2019 WL 4059004, at *7 (W.D.N.Y. Aug. 27, 2019) (citing *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might

have reached a different conclusion)). For these reasons, the Court finds that the ALJ's determination that Plaintiff did not meet Listing 12.05 is supported by substantial evidence.

Plaintiff also argues that the ALJ erred in weighing the opinions of Plaintiff's teachers, as set forth in the November 2015 teacher questionnaire and Plaintiff's mother, and in disregarding the April 2015 opinion of Dr. Shkolnikov.[11] (Joint Stip. at 17, 19-20.) This argument appears to apply both to the ALJ's step three determination and with respect to her RFC determination more broadly. The Court finds no error in the ALJ's weighing of the opinion evidence. First, with respect to the teachers' questionnaire, the ALJ explained that she assigned some weight to this opinion to the extent it was consistent with other evidence in the record. (R. 19-20.) In any event, the ALJ pointed out that the questionnaire indicated less than marked limitations in each of the domains and, thus, did not support a conclusion that Plaintiff functionally met a Listing. (R. 20.)

Second, with respect to Plaintiff's mother, the ALJ gave her opinion great weight to the extent it was consistent with the record. (*Id*.) The ALJ explained that the opinion regarding Plaintiff's ability to interact with others was consistent with the record when Plaintiff was in high school, but not following graduation when she joined the Friends Network. (*Id*.) The ALJ also noted Plaintiff's mother's opinion that Plaintiff had difficulty concentrating, understanding, following instructions and handling stress or changes in a routine, and that he accounted for these difficulties in his RFC determination, which limited Plaintiff to simple, routine, repetitive tasks not in a production-rate environment. (R. 20.)

---

[11] On April 24, 2015, pediatrician Dr. Tatyana Shkolnikov completed a Childhood Medical Disability Report, which indicated that he had last examined Plaintiff on September 16, 2014. (R. 365-66.)

Finally, Plaintiff contends that ALJ improperly dismissed the findings of Dr. Shkolnikov, who opined that Devane was functioning at an eight-year-old level in communication and cognitive skills, as outside the relevant time period. (Joint Stip. at 17-18.) Dr. Shkolnikov, who last examined Plaintiff in September 2014, noted that Plaintiff had limited word response; had difficulty leaving the house; was quiet with people around; was in special education; had no friends in school; and had poor social skills. (*Id*. at 8-9.) The ALJ did not dismiss these findings and, though she noted that Dr. Shkolnikov's assessment was prior to the period at issue, the ALJ discussed the report as part of the medical evidence in the record. (R. 16.) In any event, Plaintiff does not indicate how Dr. Shkolnikov's report, even if fully credited, would have changed the ALJ's decision.

## II. The ALJ's RFC Determination

Plaintiff's second argument, that the ALJ erred by finding that she was capable of substantial gainful employment, appears to be an argument that the ALJ's RFC determination was not supported by substantial evidence.[12] (Joint Stip. at 30-31.)

To the extent that Plaintiff argues that her diagnoses support greater limitations (Joint Stip. at 30, 36-37), it is well-settled that "bare recitals of a diagnosis are not enough to satisfy plaintiff's burden of demonstrating that her impairments meet the criteria of a listing." *Gaathje v. Colvin*, No. 15-CV-01049 (SALM), 2016 WL 11262524, at *8 (D. Conn. July 11, 2016), *report and*

---

[12] Plaintiff also argues that, under Social Security Ruling ("SSR") 83-33, Plaintiff is incapable of substantial gainful activity. (Joint Stip. at 31.) That SSR "state[s] the policy regarding whether work performed by employees is substantial gainful activity (SGA) under the disability provisions of the law." Titles II & Xvi: Determining Whether Work Is Substantial Gainful Activity-Employees, SSR 83-33, 1983 WL 31255 (S.S.A. 1983). Here, there is no issue regarding whether work performed by Plaintiff constitutes substantial gainful activity and, thus, the SSR does not apply.

*recommendation adopted*, 2017 WL 658055 (D. Conn. Feb. 17, 2017) (citing 20 C.F.R. §§ 404.1525(d), 404.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.")); *see also Drysdale v. Colvin*, No. 14-CV-01722 (SN), 2015 WL 3776382, at *9 (S.D.N.Y. June 16, 2015) ("SSI [is] not simply a diagnosis-based benefits program[.]").

Plaintiff further contends that there is no evidence to support the conclusion that she will ever be able to hold a full-time job, outgrow a job coach, perform the entire spectrum of activities of daily living by herself or live in anything but supportive housing, and the ALJ's failure to take this evidence into account indicates that the RFC determination was not supported by substantial evidence. (Joint Stip. at 31.) Despite Plaintiff's contentions, the ALJ did consider the evidence in the record regarding her supported employment, activities of daily living and living situation. The ALJ discussed the fact that Plaintiff had a job coach, but recognized that she worked 10 hours per week without the job coach, her supervisors indicated she was a great worker and she sought to work additional hours with minimal supervision once additional house became available. (R. 18.) Similarly, the ALJ found that the record indicated that Plaintiff sought greater independence in her living situation, by seeking to move out of her mother's home and into an apartment with a friend where she would have periodic check-ins from PARC staff. (*Id*.) Moreover, as the Commissioner argues, the ALJ's RFC determination is supported by other substantial evidence in

the record including Dr. Berger's opinion,[13] Plaintiff's reported activities and her school and vocational records. (Joint Stip. at 32-33.)

For these reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence. *Accord Nasta v. Saul*, No. 19-CV-03311 (LJL)(SN), 2020 WL 5441817, at *4 (S.D.N.Y. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5441274 (S.D.N.Y. Sept. 9, 2020) ("[I]f sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position.").

### III. Listing 12.10

Finally, Plaintiff argues that the ALJ erred in finding that her impairments did not meet or equal Listing 12.10 (autism spectrum disorder). (Joint Stip. at 37-40.) To meet this Listing, Plaintiff must establish, *inter alia*, one extreme limitation or two marked limitations in the broad areas of mental functioning: understanding, remembering or applying information; concentration, persistence and pace; in interacting with others; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.10. These criteria are the same as the criteria under Listing 12.05(B)(1). Thus, for the same reasons as set forth in Discussion Section I, *supra*, the Court finds that the ALJ's determination that Plaintiff had at most moderate limitations in each of these areas is supported by substantial evidence.

---

[13] The Court finds that Plaintiff's contention that Dr. Berger's opinion is against the weight of all other evaluations is contrary to the record. In any event, the ALJ gave only partial weight to Dr. Berger's opinion and explained the reasons for the weight assigned. (R. 18-19.) The Court finds no error in the ALJ's assessment. (*See* Joint Stip. at 33-34.)

**CONCLUSION**

For the foregoing reasons, judgment on the pleadings is GRANTED in favor of the Commissioner.

DATED:     September 25, 2020
           New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**